FREDERICK S. PHILLIPS
Senior Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7166
Washington, D.C. 20044
(202) 305-0439
Frederick.phillips@usdoj.gov
Attorney for Plaintiff United States

_____

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
|  | ) |
| Plaintiff. | ) |
|  | ) |
| v. | ) |
|  | ) |
| GOLDEN VALLEY ELECTRIC | ) |
| ASSOCIATION, INC., | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

_____)

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United

States and through the undersigned attorneys, acting at the request of the Administrator of the

United States Environmental Protection Agency ("EPA"), alleges as follows:

### I.    NATURE OF ACTION

1.    This is a civil action that seeks injunctive relief and civil penalties against Golden

Valley Electric Association, Inc. ("GVEA" or "Defendant") for violations of the Clean Air Act

("CAA"), 42 U.S.C. § 7401 *et seq*., and associated regulations at an electric utility in Healy,

Alaska ("Healy Power Plant").

2.     As alleged herein, the Healy Power Plant has been and may continue to be in violation of Section 112 of the CAA, 42 U.S.C. § 7412, and the National Emission Standards for Hazardous Air Pollutants from Coal and Oil-Fired Electric Utility Steam Generating Units promulgated thereunder at 40 C.F.R. Part 63, Subpart UUUUU.

## II.        JURISDICTION AND VENUE

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367 and CAA Section 113(b), 42 U.S.C. § 7413(b).

4.     This Court has personal jurisdiction over the Defendant, which does business in the State of Alaska, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

5.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1395(a); and CAA Section 113(b), 42 U.S.C. § 7413(b).  Defendant's principal places of business and the Healy Power Plant are located in this district.

6.     The United States has provided notice of the commencement of this action to the State of Alaska in accordance with CAA Sections 113(b), 42 U.S.C. § 7413(b).

## III.        DEFENDANT

7.     Defendant, Golden Valley Electric Association, Inc., is a rural electric cooperative that provides electric service to residents of Interior Alaska, including the communities of Fairbanks, Delta Junction, Nenana, Healy, and Cantwell.  Defendant's principal place of business is 758 Illinois Street, P.O. Box 71249, Fairbanks, Alaska 99701.  The Defendant is a corporate entity and as such a "person" as defined in CAA Section 302(e), 42 U.S.C. § 7602(e).

8.     The Healy Power Plant is located in Healy, Alaska and is owned and operated by Defendant.

2

## IV.    CLEAN AIR ACT AND ASSOCIATED REGULATIONS

9.    The Clean Air Act establishes a regulatory scheme designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population.  42 U.S.C. § 7401(b)(1).

10.    Section 112(c) and (d) of the CAA require EPA to publish a list of categories of "stationary sources" of hazardous air pollutants ("HAP"), and to promulgate regulations establishing emission standards for stationary sources within those categories.  42 U.S.C. § 7412(c) and (d).  These standards are known as the National Emissions Standards for Hazardous Air Pollutants ("NESHAP") for Source Categories, and are codified at 40 C.F.R. Part 63.

11.    Section 112 of the CAA defines "stationary source" as any building, structure, facility, or installation which emits or may emit any air pollutant.  42 U.S.C. § 7412(a)(3) (referring to the definition in 42 U.S.C. § 7411(a)).

12.    EPA has promulgated general provisions for the Part 63 NESHAP at 40 C.F.R. Part 63, Subpart A ("General Provisions"), which contain general provisions that apply as specified in the relevant NESHAP.  40 C.F.R. § 63.1(a)(4)(i).

13.    "HAP" is defined at 42 U.S.C. § 7412(a)(6) and 40 C.F.R. § 63.2 to mean pollutants listed in, or pursuant to, Section 112(b) of the CAA.  Mercury is a HAP.  42 U.S.C. § 7412(b).

14.    "New source" is defined as a stationary source the construction or reconstruction of which is commenced after the Administrator first proposes regulations under Section 112 establishing an emission standard applicable to such source.  42 U.S.C. § 7412(a)(4); see also 40 C.F.R. § 63.2.

3

15.     "Existing source" is defined as any stationary source other than a new source. 42 U.S.C. § 7412(a)(10); see also 40 C.F.R. § 63.2.

16.     "Owner or operator" is defined at 42 U.S.C. § 7412(a)(9) and 40 C.F.R. § 63.2 as any person who owns, leases, operates, controls, or supervises a stationary source.

17.     Pursuant to 40 C.F.R. § 63.4(a), no "owner or operator" shall operate any "affected source" in violation of an applicable NESHAP, except under an extension of compliance or exemption from compliance as provided in that section or in CAA Section 112(i)(4), 42 U.S.C. § 7412(i)(4).

18.     An "affected source" is defined at 40 C.F.R. § 63.2 as a "collection of equipment, activities, or both within a single contiguous area and under common control that is included in a section 112(c) source category or subcategory for which a section 112(d) standard or other relevant standard is established pursuant to section 112 of the [CAA]."

19.     Pursuant to Section 112(d) of the CAA, on February 16, 2012, EPA promulgated the NESHAP for Coal and Oil-Fired Electric Utility Steam Generating Units at 40 C.F.R. Part 63, Subpart UUUUU (also known as the "Mercury Air Toxics Standard" or "MATS"). The purpose of MATS is to reduce emissions of mercury and other HAPs from coal and oil-fired electric steam generating units.

20.     MATS applies to the owner or operator of a new, reconstructed, or existing coal or oil-fired electric generating unit ("EGU"). 40 C.F.R. §§ 63.9981 and 63.9982.

21.     A "coal-fired electric utility steam generating unit" is defined under MATS as an electric utility steam generating unit meeting the definition of "fossil fuel-fired" in 40 C.F.R. § 63.10042, that burns coal for more than 10.0 percent of the average annual heat input during the

4

three previous calendar years after the compliance date for the EGU in 40 C.F.R. § 63.9984 or for more than 15.0 percent of the annual heat input during any one of those calendar years.  EGU owners and operators must estimate coal, oil, and natural gas usage for the first three calendar years after the applicable compliance date and they are solely responsible for assuring compliance with MATS or other applicable standard based on their fuel usage projections.  After the first three years of compliance, EGUs are required to evaluate applicability based on coal or oil usage from the three previous calendar years on an annual rolling basis.  40 C.F.R § 63.10042.

22.     An EGU is defined under MATS as "a fossil fuel-fired combustion unit of more than 25 megawatts electric ("MWe") that serves a generator that produces electricity for sale."  40 C.F.R. § 63.10042.

23.     An EGU is "new" under MATS if it commenced construction after May 3, 2011, and is "reconstructed" if it commenced reconstruction after that date.  40 C.F.R. § 63.9982(b) and (c).  An EGU is "existing" if it is not new or reconstructed.  40 C.F.R. § 63.9982(d).

24.     The compliance date for existing EGUs under MATS was April 16, 2015. 40 C.F.R. § 63.9984(b).  Thus, any EGU that met the definition of an existing EGU under MATS on April 16, 2015 was required to be in compliance with the final standards of MATS on and after that date, unless the EGU received a compliance extension.

25.     An existing unit that did not meet the MATS definition of an existing EGU on April 16, 2015 (*e.g.*, was not generating electricity for sale on that date) but later meets that definition is required to comply with the applicable existing source provisions of MATS on the date when such unit first meets the MATS definition of an existing EGU.  40 C.F.R. §§ 63.9984(d); 63.10000(h)(1).

5

26.     An EGU subject to MATS is required at all times to meet each emission limit and

work practice standard in 40 C.F.R. Part 63, Subpart UUUUU, Tables 1 through 3, that applies to

such EGU except as provided under 40 C.F.R. § 63.10009.  40 C.F.R. § 63.9991(a)(1).  Table 2,

Line 2 includes the limits for existing EGUs that fire low rank, virgin coal.  Table 2, Line 2(c)

contains an emission limit for mercury of 4.0 pounds of mercury per TerraBtu of heat input

(lb/TBtu) or 0.04 pounds of mercury per Gigawatt power (lb/GWh) output.

27.     40 C.F.R. § 63.10009 allows affected EGUs to use emissions averaging to meet the

emission limits in 40 C.F.R. § 63.9991(a)(1) if (A) a major source contains more than one EGU in

the same subcategory or (b) the EGU uses a continuous emissions monitoring system ("CEMS"), or

sorbent trap monitoring systems for mercury emissions, or quarterly emissions testing for

demonstrating compliance.

28.     Each existing EGU subject to MATS must demonstrate initial compliance with each

applicable emission limit in Table 1 or 2 of MATS (other than tune-up work practice requirements)

through performance testing no later than the compliance date contained in 40 C.F.R. §63.9984.  40

C.F.R. § 63.10005; see also 40 C.F.R. § 63.10000(c)(1).

29.     An existing coal-fired EGU that does not qualify as a "low emitting EGU" or

"LEE" for mercury must demonstrate initial and continuous compliance through use of a mercury

CEMS or a sorbent trap monitoring system, in accordance with 40 C.F.C. Part 63, Subpart

UUUUU, Appendix A.  40 C.F.R. § 63.10000(c)(1)(vi). The first such compliance demonstration

must be conducted no later than 180 days after the applicable date in 40 C.F.R. § 63.9984(a), (b),

(c), (d), or (e).  40 C.F.R. §§ 63.9984(f); 63.10000(h)(1).

30.     To qualify as a LEE for mercury, an existing EGU must demonstrate:  (A) average emissions less than 10 percent of the applicable mercury emission limit in Table 2 of MATS (expressed either in units of lb/TBtu or lb/GWh); or (B) potential mercury mass emissions of 29.0 or fewer pounds per year and compliance with the applicable mercury emission limit in Table 2 of MATS (expressed either in units of lb/TBtu or lb/GWh).  40 C.F.R. § 63.100005(h).

31.     An existing EGU that is required to install and operate a mercury CEMS or sorbent trap monitoring system must have installed and certified such system at least 30 days prior to the date of the required compliance demonstration for such unit.  40 C.F.R. §§ 63.10000(h)(1), 63.10005(d)(3), 63.10000(h)(3), and Table 2(2)(c).

32.     Recordkeeping and reporting requirements that apply to the initial compliance demonstration for a unit with a mercury CEMS or sorbent trap monitoring system are set forth in 40 C.F.R. §§ 63.100031 and 63.100032.

33.     Within 60 days after the date of completing each performance test, the owner or operator is required to submit the performance test report required by MATS to EPA.  40 C.F.R. § 63.10031(f).

**B.     CAA Enforcement Provisions**

34.     CAA Section 113(b), 42 U.S.C. § 7413(b), authorizes the United States to commence a civil action for a permanent or temporary injunction, and/or for a civil penalty, whenever any person has violated:  (i) any requirement or prohibition of any applicable State Implementation Plan or permit; or (ii) any other requirement or prohibition under a pertinent provision of the CAA, including, but not limited to, any NESHAP requirement.

7

35.     Under Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Federal Civil Penalties Inflation Adjustment Act, 28 U.S.C. § 2461, and 40 C.F.R. § 19.4, the United States may seek civil penalties up to $37,500 per day for violations occurring after December 6, 2013, and on or before November 2, 2015, and up to $97,229 per day for violations occurring after November 2, 2015 and assessed on or after January 15, 2018.  40 C.F.R. 19.4; 83 Fed. Reg. 1190 (Jan. 10, 2018); 78 Fed. Reg. 66643 (Nov. 6, 2013).

## V.     <u>GENERAL ALLEGATIONS</u>

36.     The Healy Power Plant has two coal-fired electric generating units, referred to as Unit 1 and Unit 2.

37.     Unit 1 at the Healy Power Plant ("Unit 1") is an approximately 25 MWe coal-fired electric generating unit owned and operated by Defendant.

38.     Unit 2 at the Healy Power Plant, the Healy Clean Coal Project ("HCCP" or "Unit 2") is an approximately 50 MWe coal-fired electric generating unit owned and operated by Defendant.

39.     Defendant has, at all relevant times, been the "owner" and "operator" of Unit 1 and Unit 2 as defined in Section 112(a)(12) of the CAA, 42 U.S.C. § 7412(a)(12), and 40 C.F.R. § 63.2.

40.     The Healy Power Plant is a "stationary source" as defined in Section 112(a)(3) of the CAA, 42 U.S.C. § 7412(a)(3), and 40 C.F.R. § 63.2.

41.     Unit 1 and Unit 2 are each a "coal-fired EGU" as defined under MATS and each is therefore an "affected source" under MATS.

42.     Unit 1 and Unit 2 were each constructed prior to May 3, 2011, and have not been reconstructed after that date.  They are therefore each an existing EGU under MATS.

8

43.     Unit 1 and Unit 2 each fire low-rank, virgin coal.

44.     Neither Unit 1 nor Unit 2 was granted an extension of the MATS compliance date under CAA Section 112(i)(3), 42 U.S.C. § 7412(i)(3), and 40 C.F.R. § 63.6(i), or an exemption under CAA Section 112(i)(4), 42 U.S.C. § 7412(i)(4).

45.     Unit 1 was operating and generating electricity for sale on April 16, 2015, and was therefore required to be in compliance with MATS on that date.

46.     After being shut down for more than 15 years, Unit 2 resumed operations in 2015, first firing oil on May 28, 2015, first generating electricity for sale on June 13, 2015, and first firing coal on August 4, 2015.  Unit 2 therefore became an existing EGU subject to MATS on June 13, 2015, based on its combustion of oil and sale of electricity to the grid, and was required to be in compliance with MATS on that date.  See 40 C.F.R. §§ 63.9982(a) and (d); 63.9984(d); 63.10042.

47.     The initial compliance demonstration through performance testing for Unit 2 was required to be completed 180 days after June 13, 2015, or by December 10, 2015. 40 C.F.R. § 63.9984(a), (b), (c), (d), or (e).  40 C.F.R. §§ 63.9984(f); 63.10000(h)(1).

48.     Defendant conducted initial performance testing of Unit 2 for mercury from November 25, 2015, through February 25, 2016.

49.     Unit 2 operated intermittently on coal and oil until it was shut down due to an explosion in the coal bin and subsequent fire on March 3, 2016.

50.     Defendant submitted the results of the mercury performance testing of Unit 2 to EPA in an April 22, 2016, Notice of Compliance Status.  The report states that the testing found Unit 2 emitting 4.76 lb/TBtu of mercury, approximately 19% over the emission limit of 4.0 lb/TBtu.

9

51.     Unit 2 resumed operations on September 21, 2016, running only on oil until October 31, 2016.  The unit combusted small amounts of coal on November 1 and 2, 2016, before a second explosion in the coal delivery system again idled Unit 2.

52.     Unit 2 was not equipped with a mercury CEMS or a sorbent trap monitoring system by the date the initial compliance demonstration was required or prior to its shutdown after the second explosion on November 2, 2016.

53.     Unit 2 remained shut down until approximately June 12, 2018.

54.     Defendant installed a sorbent trap monitoring system for mercury on Unit 2 prior to its restart in June 2018.

55.     Defendant completed initial performance testing of Unit 2 for hydrochloric acid ("HCl") on October 28, 2015, and reported the test results to EPA on January 19, 2016.

56.     Defendant completed initial performance testing of Unit 2 for filterable particulate matter ("PM") on October 28, 2015, and submitted the test results to EPA on January 19, 2016.

57.     Defendant completed initial performance testing of Unit 1 for PM on October 8, 2015, and reported the test results to EPA on December 11, 2015.

## FIRST CLAIM FOR RELIEF

### Late Initial Compliance Demonstration for
### Unit 2

58.      Paragraphs 1 through 57 are re-alleged and incorporated by reference as if fully set forth herein.

59.     Defendant did not complete the initial compliance demonstration through performance testing for Unit 2 for mercury until February 25, 2016, approximately 77 days after the

10

December 10, 2015 deadline, in violation of violation of MATS, 40 C.F.R. §§ 63.9984(f) and 63.10005(a).

60.    Defendant's violations of the CAA and MATS, as set forth in this Claim for Relief, subject Defendant to injunctive relief and civil penalties pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4.

## SECOND CLAIM FOR RELIEF

### Exceedance of the Mercury Emission Limit for Unit 2

61.    Paragraphs 1 through 57 are re-alleged and incorporated by reference as if fully set forth herein.

62.    Based on the initial performance test results for Unit 2 for mercury, Unit 2 exceeded the applicable mercury limit for Unit 2 on each day of operation while combusting coal from August 4, 2015 through November 2, 2016, approximately 157 operating days, in violation of MATS, 40 C.F.R. §§ 63.9991(a)(1) and Table 2, Line 3(c).

63.    Defendant's violations of the CAA and MATS, as set forth in this Claim for Relief, subject Defendant to injunctive relief and civil penalties pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4.

## THIRD CLAIM FOR RELIEF

### Failure to Install, Operate, and Certify a Mercury CEMS or Sorbent Trap Monitoring System on Unit 2

64.    Paragraphs 1 through 57 are re-alleged and incorporated by reference as if fully set forth herein.

11

65.     Unit 2 does not qualify for LEE status for mercury because mercury emissions from Unit 2 exceeded 4.0 lb/Tbu of mercury while operating on coal from approximately August 4, 2015 through November 2, 2016, when it shut down.

66.      Defendant did not install, operate, and certify a mercury CEMS or sorbent trap monitoring system on Unit 2, or conduct the required recordkeeping or reporting required for such continuous monitoring systems, in violation of MATS, 40 C.F.R. §§ 63.10000(c)(1)(vi), 63.10031, and 63.10032.

67.     Defendant's violations of the CAA and MATS, as set forth in this Claim for Relief, subject Defendant to injunctive relief and civil penalties pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4.

## FOURTH CLAIM FOR RELIEF

### Late Submission of Performance Test Reports

68.     Paragraphs 1 through 57 are re-alleged and incorporated by reference as if fully set forth herein.

69.     Defendant failed to submit performance tests for HCl and PM for Unit 2 and for PM for Unit 1 within 60 days after the date of completing each such performance test, in violation of MATS, 40 C.F.R. § 63.10031(f).

70.     Defendant's violations of the CAA and MATS, as set forth in this Claim for Relief, subject Defendant to injunctive relief and civil penalties pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States, respectfully requests that this Court:

12

(1)     Order Defendant GVEA to immediately comply with the statutory and regulatory requirements cited in this Complaint;

(2)     Assess civil penalties against Defendant for up to the amounts provided in the applicable statutory provisions; and

(3)     Grant the United States such other relief as this Court deems just and proper.


**FOR THE UNITED STATES OF AMERICA:**

  /s/*Nathaniel Douglas*
NATHANIEL DOUGLAS
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

  /s/*Frederick S. Phillips*
FREDERICK S. PHILLIPS
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
(202) 305-0439
Frederick.phillips@usdoj.gov


BRYAN SCHRODER
Acting United States Attorney
District of Alaska

RICHARD POMEROY
Civil Chief
United States Attorney's Office
District of Alaska

13

Of Counsel:

Julie Vergeront
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 10, ORC-113
1200 6th Avenue
Seattle, WA 98101
(206) 553-1497
Vergeront.julie@epa.gov